**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael S. ELKINS, Defendant–Appellant.**

**No. 97–3426.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1998.

Decided May 12, 1999.

Matthew L. Jacobs (argued), Thomas P. Schneider, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Joseph R. Cincotta (argued), Schweitzer & Cincotta, Milwaukee, WI, for Defendant–Appellant.

Before COFFEY, EASTERBROOK and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

On March 27, 1997, the government filed an information charging the defendant-appellant Michael S. Elkins ("Elkins") with defrauding a federally insured bank, Firstar Bank Milwaukee, N.A. ("Firstar"), of $21,500, in violation of 18 U.S.C. § 1344. Pursuant to a written plea agreement, Elkins agreed to waive prosecution by indictment and to plead guilty to the information. On April 25, 1997, the trial court accepted Elkins' plea of guilty, and some five months later, on September 18, 1997, the judge sentenced Elkins to twenty-four months of imprisonment to be followed by five years of supervised release, with the first 120 days to be spent in community confinement. Elkins challenges his sentence and the voluntariness of his plea, but since he failed to present his arguments to the trial judge he has waived his claims. AFFIRMED.

## I. BACKGROUND

On July 29, 1995, Michael Elkins purchased a 1994 GMC Sierra truck from a car dealership in Oconomowoc, Wisconsin. The $21,500 purchase was financed

through Union Acceptance Corporation ("UAC"), which in return for the loan received a lien on the vehicle.

In early August, 1995, Elkins approached the Firstar Bank of Oconomowoc, Wisconsin, and applied for a $21,500 loan, stating that Firstar offered a lower percentage rate than did UAC, and he was interested in refinancing his car loan. Firstar approved the loan application and gave Elkins a cashier's check in the amount of $21,500, listing Elkins and UAC as joint payees. Elkins agreed to turn the check over to UAC to pay off his outstanding loan, and further agreed to give Firstar the primary lien on his truck.

On August 16, 1995, Elkins returned to the bank and stated that he needed a replacement check because one of his friend's children had mutilated the check. The bank teller examined the check and discovered that the payee portion had been torn off, and the bank agreed to issue a replacement check. Elkins requested that the check be made payable to him alone, and the bank complied.

Instead of using the money to pay off the UAC loan as he had agreed, Elkins opened a new checking account at the Waukesha (Wisconsin) State Bank, deposited the cashier's check in that account, and utilized the funds to support his struggling electrical repair business. After he failed to make payments on his Firstar loan, the bank, on September 29, 1995, sent him a delinquency notice under the loan contract demanding payment of the entire balance. Elkins failed to respond, and on December 1, 1995, Firstar sent a second notice. The second notice was returned to the bank marked "return to sender" since Elkins had moved.[1]

In March of 1996, the bank decided to repossess the truck. While gathering information before proceeding to repossession, the bank became aware of the fact that Elkins had never paid off the UAC loan, leaving UAC with the first security position on the truck and Firstar with only a secondary lien. An employee of the bank contacted the Federal Bureau of Investigation ("FBI") to open an investigation into Elkins' conduct with the federally insured bank loan. On April 2, 1996, an FBI agent contacted Elkins and informed him he was suspected of fraudulently misusing the proceeds of the $21,500 loan, in violation of the bank fraud statute, 18 U.S.C. § 1344. Eight days after the visit from the agent, Elkins made his initial payment, totaling $1,355, on the Firstar loan, and shortly thereafter made a second payment of $902.

On March 27, 1997, a one-count Information charging Elkins with bank fraud was filed in the United States District Court. Elkins with his attorney agreed to enter into a negotiated plea agreement. During the plea agreement hearing, on April 25, 1997, the judge engaged in an extensive colloquy with Elkins to ensure that he entered into his guilty plea voluntarily and understood the ramifications of his guilty plea. The judge initially explained to Elkins that the court was going to question him in order to be assured that "your proposed plea of guilty is the product of a free and voluntary act on your part and not the result of any undue pressure or coercion, and, next, that I understand that you understand the consequences of pleading guilty to this offense, including the penalties provided by law...." The judge went on to make sure that Elkins had discussed the sentencing guidelines with his attorney and that he understood the ramifications of his guilty plea, including the possible length of his sentence:

> THE COURT: What do you understand the maximum penalty to be for the offense charged in the information, Mr. Elkins?
>
> THE DEFENDANT: I'm not really sure on that, your Honor. I've done a little bit of reading, and the paper work that I have here says 30 years and $1 million fine, and then I'm kind of confused about that. I had the guidelines,

---

1. Elkins moved two or three times in 1995 without leaving a forwarding address.

so I'm not really sure, but I guess from here it says a maximum of 30 years.

. . . .

THE COURT: Now, have you had an opportunity to discuss with [the defense counsel] the Federal Sentencing Guidelines and how they might apply in your case?

THE DEFENDANT: Yes, Your Honor.

At the conclusion of the hearing, the trial judge, satisfied that the defendant's plea was voluntary and that he understood the ramifications of his guilty plea, accepted Elkins' guilty plea.[2]

During the sentencing hearing, the court, being convinced that the defendant intended to defraud the bank of the entire amount of $21,500, assigned him an offense level of ten. *See* U.S.S.G. § 2F1.1(b)(1)(E).[3] The judge upon the defendant's request granted Elkins a two-point reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1. Factoring in a criminal history category of VI,[4] Elkins' sentencing guideline range, after being lowered for acceptance of responsibility, was eighteen to twenty-four months, and the judge sentenced Elkins to the maximum, twenty-four months' imprisonment, to run consecutively to a state term of imprisonment for a state crime probation revocation. In addition, the judge ordered that upon his release from confinement Elkins was to serve five years of supervised release, with the first 120 days to be served in a community correctional center, as well as a $50 special assessment, and restitution in the amount of $8,493.[5]

## II. ISSUES

On appeal, the defendant-appellant contends that (1) the sentencing judge exceeded the maximum sentence permissible under the guidelines in that he sentenced Elkins to both the maximum term of imprisonment (twenty-four months) *and* 120 days of community confinement (as a condition of supervised release); and, (2) his guilty plea was involuntary since the court neglected to inform him that he could receive supervised release.

## III. ANALYSIS

 Because Elkins failed to present his arguments concerning the propriety of community confinement and the voluntariness of his plea to the sentencing court, he has waived these contentions and we review his claims for plain error. *See United States v. Brassell*, 49 F.3d 274, 277 (7th Cir.1995); *United States v. Maggi*, 44 F.3d 478, 484 (7th Cir.1995). "A plain error is not only a clear error but an error likely to have made a difference in the judgment, so that failure to correct it could result in a miscarriage of justice, that is, in the conviction of an innocent person or the imposition of an erroneous sentence." *United States v. Newman*, 965 F.2d 206, 213 (7th

---

2. The judge stated "The record in Mr. Elkins' case should reflect that, based upon the court's review of the written plea agreement, together with Mr. Elkins' responses here in open court, that I find that he's fully competent and capable of entering an informed plea and that his plea of guilty to the charge embodied in the information is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense charged. Accordingly, I do herewith accept Mr. Elkins' plea of guilty and do now adjudge him guilty of the offense of bank fraud in violation of Section 1344 of Title 18."

3. The base offense level for fraud and deceit is six, *see* U.S.S.G. § 2F1.1(a); if the loss is between $20,000 and $40,000, the base of-

fense level is increased by four. *See* U.S.S.G. § 2F1.1(b)(1)(E).

4. Elkins had twenty-six criminal history points, twice the amount required to fall under the highest criminal history category. According to the sentencing judge, Elkins brought to the court "more than fourteen adult convictions and nine or ten as a juvenile, all involving what can only be categorized as dishonesty and deceit."

5. After the FBI agent visited him, Elkins began to make payments to Firstar. His payments totaled $2,257, leaving a balance owing, at the time of sentencing, of $19,243. We cannot understand why the sentencing judge set restitution for only $8,493.

Cir.1992), citing *United States v. White*, 903 F.2d 457, 466–67 (7th Cir.1990); *United States v. Wilson*, 962 F.2d 621, 627 (7th Cir.1992).

## A. *Community Confinement.*

■ Elkins initially maintains that the judge erred when he sentenced Elkins to both the maximum term of twenty-four months and a subsequent 120 days in community confinement (as a condition of supervised release). Specifically, Elkins argues that because community confinement is a form of imprisonment, the two components of the sentence were redundant. The government denies that community confinement is a form of imprisonment under the guidelines, instead contending that community confinement is simply a residence requirement associated with supervised release.

This Court has repeatedly held that " 'imprisonment,' at least in the context of the Guidelines, denotes time actually spent in a penal institution." *United States v. Compton*, 82 F.3d 179, 181 (7th Cir.1996) (citing *United States v. Phipps*, 68 F.3d 159, 162 (7th Cir.1995) (citing *United States v. Swigert*, 18 F.3d 443 (7th Cir. 1994))). *See also Prewitt v. United States*, 83 F.3d 812, 817 (7th Cir.1996) ("Prewitt was not imprisoned—incarcerated in a penal institution—when he was sentenced....").

We explained the reason for this holding in *Swigert*. In that case, the defendant pled guilty to bankruptcy fraud pursuant to a written plea agreement which stipulated that "the incarceration component of any sentence imposed by the Court shall be a term of imprisonment in the custody of the Attorney General of sixty-seven percent (67%) of the low-end of the applicable sentencing guidelines range." *Swigert*, 18 F.3d at 444. At sentencing, the parties agreed that the guideline range for Swigert's offense was twelve to eighteen months in prison, and the judge, acting in accord with the approved plea agreement, sentenced Swigert to a jail term of eight months. *See id.* The judge stated at sentencing that he "might have been in-

clined" to sentence the defendant to a split sentence (part imprisonment and part home detention) but that he could not since the plea agreement required a jail term of eight months. *See id.* Swigert appealed, arguing that under the plea agreement "imprisonment" comprised both "time in a penal institution" as well as community confinement or home detention. We rejected that contention on appeal, holding that community confinement and home detention, rather than being forms of imprisonment, are *substitutes* for imprisonment:

> [U.S.S.G.] § 5C1.1 plainly draws a distinction between "imprisonment" and either community confinement or home detention. *See United States v. Latimer*, 991 F.2d 1509, 1513 (9th Cir.1993) ("the division between imprisonment and community treatment center confinement is emphasized again in § 5C1.1"). That section permits "a term of supervised release with a condition that substitutes community confinement or home detention ..., provided that at least one-half of the minimum term is satisfied *by imprisonment*." U.S.S.G. § 5C1.1(d)(2) (emphasis added); *see also id.* at Application Note 4. Community confinement and home detention are thus *imprisonment substitutes* and do not themselves constitute "imprisonment." *See* U.S.S.G. § 5C1.1(e)(2) and (3) (setting rate at which a day of community confinement or home detention *substitutes* for a day of imprisonment); *see also Latimer*, 991 F.2d at 1513–14; *United States v. Jalili*, 925 F.2d 889, 894 (6th Cir.1991); *United States v. Jordan*, 734 F.Supp. 687, 688 (E.D.Pa.1990).

> ....

> The Sentencing Commission clearly used "sentence of imprisonment" in [U.S.S.G. § 5C1.1(f) ] to mean only confinement in prison, and we will not impose a different meaning on the Commission's use of the same phrase in subsection (d) of the same Guidelines provision.

*Id.* at 445. *See also United States v. Goad,* 44 F.3d 580, 585 n. 13 (7th Cir.1995) ("[A] term of supervised release does not replace a portion of the sentence of imprisonment but rather is an order of supervision in addition to any term of imprisonment imposed by the court").

Since Elkins' term of community confinement was an order of supervision relating to supervised release and was not an additional term of imprisonment, we reject Elkins' contention that the judge's sentence exceeded the sentencing guidelines.

**B. *Voluntariness of Guilty Plea.***

■ We next consider Elkins' contention that his guilty plea was involuntary since the court neglected to inform him that he could receive supervised release. The government contends that the court's omission at sentencing constituted harmless error since the defendant was warned at the plea hearing that he could receive a thirty-year sentence of imprisonment, and he only received a two-year sentence with five years of supervised release. As noted above, Elkins failed to apprise the trial judge of this argument at the time of sentencing and thus has waived this claim, and we review his contention for plain error. *See Brassell, supra,* 49 F.3d 274 at 277.

■ "Due process and Federal Rule of Criminal Procedure 11 require that a defendant's guilty plea shall be voluntarily (i.e., not induced by threats or promises of any kind), and knowingly made." *United States v. Ranum,* 96 F.3d 1020 (7th Cir. 1996) (citing *United States v. Musa,* 946 F.2d 1297, 1303 (7th Cir.1991)); *Haase v. United States,* 800 F.2d 123, 127 (7th Cir. 1986). In determining whether the defendant's plea was voluntary, we conclude whether, after "looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights." *United States v. Wagner,* 996 F.2d 906, 912 (7th Cir.1993). "The Supreme Court has cautioned that, in reviewing Rule 11 proceedings, '[m]atters of reality, and not mere ritual, should be controlling.'"

*United States v. Richardson,* 121 F.3d 1051, 1057 (7th Cir.1997) (quoting *McCarthy v. United States,* 394 U.S. 459, 467–68 n. 20, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)) (internal quotations and citation omitted). "In other words, courts 'must strike a balance between a "crabbed interpretation" *that exults form over substance,* and an overly technical review which sets "a procedural trap for the government." ' " *Id.* (quoting *United States v. Saenz,* 969 F.2d 294, 296 (7th Cir.1992) (citation omitted)) (emphasis added).

Rule 11 requires district judges, when accepting guilty pleas, to inform the defendant of the effect of any special parole or supervised release term:

> A Court must ... inform the defendant of, and determine the defendant understands, ... (1) the nature of the charge, ... the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term....

Fed.R.Crim.P. 11(c). The Rule 11 hearing need not provide the defendant with a

■ "detailed course on criminal procedure:

> We have never required strict adherence to the strictures [of Rule 11]; rather, the focus is whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights. We have not and do not intend to mandate a specific format or dialogue to be followed in a Rule 11 hearing. If the defendant is fully apprised of his rights and the consequences of his actions, and he knowingly and voluntarily enters into the entire contents of the plea agreement, the hearing is proper."

*Ranum* at 1024 (citing *United States v. Messino,* 55 F.3d 1241, 1248 (7th Cir.1995) (citations and quotations omitted)). "A trial court's failure to accurately inform a defendant about the minimum mandatory term of supervised release is harmless error if the defendant's sentence, when com-

bined with the term of supervised release, is within the maximum sentence made known to the defendant at the time he entered his plea." *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir.1996) (citing *Saenz*, 969 F.2d at 297).

In this case, Elkins, who received a sentence of twenty-four months of imprisonment and five years of supervised release, conceded at his plea hearing that he understood he could be sentenced to up to thirty years' imprisonment for his offense:

> THE COURT: What do you understand the maximum penalty to be for the offense charged in the information, Mr. Elkins?
>
> THE DEFENDANT: I'm not really sure on that, your Honor. I've done a little bit of reading, and the paper work that I have here says 30 years and $1 million fine, and then I'm kind of confused about that. I had the guidelines, so I'm not really sure, but I guess from here it says a maximum of 30 years.

The judge was further assured that the defendant had spoken with his attorney about the impact of the Sentencing Guidelines upon his sentence:

> THE COURT: Now, have you had an opportunity to discuss with [the defense counsel] the Federal Sentencing Guidelines and how they might apply in your case?
>
> THE DEFENDANT: Yes, Your Honor.

Since Elkins knew that the maximum statutory sentence for his offense was thirty years and his ultimate sentence (twenty-four months' imprisonment and five years of supervised release) fell within that maximum, the fact that the court omitted mention of supervised release is harmless error, particularly since Elkins nowhere claims that he would have pled differently had the court discussed supervised release. *See id.* at 297.

## CONCLUSION

Elkins' failure to challenge before the trial court his sentence or the voluntariness of his guilty plea results in his arguments being waived unless he can demonstrate that his sentence constitutes a "miscarriage of justice." *Newman, supra,* 965 F.2d at 213. Elkins' claim that his sentence exceeds the maximum term of imprisonment under the guidelines falls far short of constituting "miscarriage of justice" because community confinement is not a form of imprisonment. Furthermore, his claim that the court erred in neglecting to discuss supervised release at the plea hearing fails because the court's error was harmless.

AFFIRMED.