**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Louis D. HARGROVE and Adonis Hargrove, Defendants–Appellants.**

Nos. 98–3278, 98–3582.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1999.

Decided Jan. 20, 2000.

Lawrence S. Beaumont (argued), Office of U.S. Atty., Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

David S. Rosenbloom, Lara M. Levitan (argued), McDermott, Will & Emery, Chicago, IL, for Defendant–Appellant Louis D. Hargrove.

Richard H. Parsons, Office of Public Defender, Peoria, IL, for Defendant–Appellant Adonis Hargrove.

Before CUDAHY, COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

On April 22, 1998, the defendants-appellants Louis D. Hargrove ("Louis")and his cousin, Adonis Hargrove ("Adonis"), were charged in a single-count indictment in the Central District of Illinois with violating 18 U.S.C. § 2113(a), (d) (Armed Bank Robbery). On May 5, 1998, Louis pled guilty to the indictment, and, on June 24, 1998, Adonis also entered a plea of guilty.[1] On September 3, 1998, the district court sentenced Louis to 98 months' imprisonment, and on September 28, 1998, the judge sentenced Adonis to 212 months' imprisonment. On appeal, both defendants argue that the trial judge's decision to enhance their offense levels by two, based upon the fact that the victim-teller, Tracy Lutz ("Lutz"), sustained a neck injury (pulled neck muscle) during the bank robbery, was

clearly erroneous. In addition, Louis bases his claim of ineffective assistance of trial counsel on the premise that his counsel inexcusably failed to object to the two level enhancement for the infliction of bodily injury upon the bank teller. We affirm.

## I. BACKGROUND

In early October 1997, Adonis, in a scheme reminiscent of robbing Peter to pay Paul, made plans to rob a bank in order that he might post a $10,000 bond in a separate criminal matter. In preparation for his new fund raising scheme, Adonis set up surveillance on several banks in the southern Illinois area and observed an employee enter a bank and decided that the best way to rob a bank would be to wait for an employee to arrive at the bank at an early hour before it opened and force him or her to let them into the bank and open the vault. Adonis, for reasons unexplained in the record, eventually determined that BankChampaign in Champaign, Illinois, was the safest bank to rob.

In late December 1997, Adonis traveled to Bloomington, Illinois, in an attempt to convince a friend, Kevin Barnes, to assist him in robbing BankChampaign. Initially, Barnes tried to discourage Adonis from carrying out his plans to rob the bank, but eventually agreed to help Adonis. The two men traveled to Champaign, Illinois, with the intent of robbing the bank. When they arrived at the bank, workers were present at the building next to the bank and the two became leery and decided not to go through with the robbery at that time.

A few days later, Barnes and Louis visited Adonis in Champaign, Illinois, and the subject of the bank robbery again surfaced. Like Barnes, Louis initially was

---

1. The plea agreements do not restrict the appellants' right to appeal the sentences imposed. Accordingly, these claims are properly before this court. *See United States v. Williams,* 184 F.3d 666, 668 (7th Cir.1999) ("The content and language of the plea agreement itself, as well as the colloquy where necessary, govern our determination as to the validity of the waiver."); *see also United States v. Woolley,* 123 F.3d 627, 632 (7th Cir.1997).

hesitant to participate in a bank robbery but after Adonis told him that he really needed his help, Louis capitulated and agreed to assist Adonis and Barnes. With the three men now in agreement, Louis, Adonis, and Barnes set off to rob BankChampaign.

At approximately 1:00 a.m. on January 6, 1998, and in preparation for the bank robbery, Adonis stole a vehicle to be used in the bank robbery. At 6:45 a.m., a female employee of the bank, Tracy Lutz, arrived in the BankChampaign parking lot. As Lutz pulled her car into the parking lot, Adonis drove his stolen vehicle behind her and Louis jumped out of the car and ran up to the driver's side window of Lutz' car yelling at her not to pull away while holding what appeared to be a small handgun in his hand.[2]

Ignoring Louis' threats, Lutz attempted to drive off, but before she could get away, Barnes smashed the front passenger side window of her car, unlocked the passenger door, and jumped into her car. Adonis immediately rammed Lutz' car from behind and pushed the car into a nearby field where it got stuck in the mud. The robbers forced Lutz out of her car, accompanied her to the bank, and forced her to open the bank's rear door.[3]

Once inside the bank, the three men instructed Lutz to turn off the alarm and open the main vault. After turning off the alarm, Lutz told the three men that she did not have keys for the main vault but did have keys for the teller vault. The armed robbery trio demanded that she open the teller vault as well as the teller drawers contained therein. After Lutz did so, she was shoved backwards and became pinned between the teller vault door and the wall, and suffered an injury to her neck. The three men took $37,538 in cash from the teller drawers, placed the money in a plastic bag, and exited the bank.

On March 25, 1998, law enforcement officials videotaped a pre-arranged meeting between Barnes and a cooperating confidential informant. During the meeting, Barnes admitted his involvement in the bank robbery and also stated that Adonis was a member of the bank robbery trio. On March 26, 1998, Adonis was questioned by investigators and admitted his participation in the bank robbery, and implicated his cousin, Louis Hargrove. On April 6, 1998, Louis voluntarily gave a statement to the investigating FBI agents and admitted his involvement in the robbery.

Both Louis and Adonis pled guilty (on May 5, 1998, and June 1, 1998, respectively) to bank robbery and Pre–Sentence Investigation Reports(PSRs) were ordered. The PSRs recommended a two level increase for both defendants based on the fact that the bank teller, Lutz, sustained a neck injury during the bank robbery.

During Louis' September 3, 1998 sentencing hearing, the court adopted the PSR's findings regarding Lutz' neck injury and recommendation concerning the two level enhancement, and Louis' counsel did

2. It was later determined that the gun Louis had in his hand was a silver-colored toy gun. A toy gun satisfies the armed bank robbery statute. "Indeed, every circuit court considering even the question of whether a fake weapon that was never intended to be operable has come to the same conclusion" that it constitutes a dangerous weapon for the purposes of the armed robbery statute. *See United States v. Hamrick*, 43 F.3d 877, 882–83 (4th Cir.1995). The same conclusion has been reached even in circumstances where there was no weapon but the defendant acted as if he had a weapon. *See United States v. Benson*, 918 F.2d 1, 3 (1st Cir.1990) (feigned gun, actually a pocket knife, held in robber's pocket, a dangerous weapon under § 2113(d)); *see*

*also United States v. Garrett*, 3 F.3d 390, 391 (11th Cir.1993) (toy gun a dangerous weapon under § 2113(d)); *United States v. Cannon*, 903 F.2d 849, 854–55 (1st Cir.1990) (same); *United States v. Medved*, 905 F.2d 935, 939–40 (6th Cir.1990) (same); *United States v. Martinez–Jimenez*, 864 F.2d 664, 668 (9th Cir. 1989) (same). The only circumstance in which section 2113(d) has been held inapplicable to the use of a toy gun was where the gun was concealed during a bank robbery and never displayed, i.e., where it was never "used." *See United States v. Perry*, 991 F.2d 304, 309–10 (6th Cir.1993).

3. During this ordeal, Lutz pleaded with the men not to hurt her because she had children.

not object. The judge sentenced him to 98 months' imprisonment,[4] 5 years' supervised release, a $100 special assessment, and $46,515.76 in restitution.

The trial court sentenced Adonis on September 29, 1998. In contrast to Louis' counsel, Adonis' counsel objected to the two level enhancement for the bodily injury to the teller on the grounds that there was not sufficient proof that Lutz had suffered a bodily injury as defined by the guidelines. In support of his argument, Adonis' counsel offered a police investigation report, written shortly after the bank robbery, wherein Lutz stated that she had no injuries.[5] But, defense counsel does acknowledge that Lutz was later taken to a hospital, had x-rays taken of her neck, and was prescribed muscle relaxants. The judge rejected Adonis' argument and found that the neck injury suffered by Lutz qualified as a bodily injury under § 2B3.1(b)(3)(A), stating that Lutz sought and received "medical attention," and "neck injuries are painful." Accordingly, the trial judge sentenced Adonis to 212 months' imprisonment,[6] 5 years' supervised release, a $100 special assessment, and $46,515.76 in restitution.

## II. ISSUES

On appeal, both defendants challenge the two-level enhancement for bodily injury pursuant to U.S.S.G. § 2B3.1(b)(3)(A).[7]

4. Louis' sentencing range would have been 70 to 87 months' imprisonment without the two-level enhancement for the victim teller's bodily injury. With the enhancement the defendant's sentencing range increased to 87 to 108 months' imprisonment.

5. It is not surprising that Lutz did not immediately complain of a pulled neck muscle. Such injuries frequently are not immediately apparent and she may very well have been in shock from the robbery.

6. Had the trial judge accepted defense counsel's argument, the defendant's range would have been 151 to 188 months' imprisonment. With the enhancement, Adonis' sentencing range was 188 to 235 months' imprisonment.

7. As noted previously, Louis failed to object to the enhancement of his sentence before the

Louis also claims he received the ineffective assistance of counsel as a result of counsel's failure to object to the PSR's recommendation that he receive the two-level enhancement for the neck injury sustained by the victim-teller pursuant to § 2B3.1(b)(3)(A).

## III. ANALYSIS

On appeal, both defendants argue that the enhancement under § 2B3.1(b)(3)(A) for inflicting injury was improper under the facts of this case because the "quality of proof" of bodily injury was insufficient to support the court's finding of the requisite bodily injury. The Sentencing Guidelines define "bodily injury" to mean "any significant injury; e.g., an injury that is painful or obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1, comment. (n.1(b)).

Both Louis and Adonis do not contest the fact that the victim teller in this case suffered a pulled neck muscle as a direct result of their actions, sought medical attention, had x-rays taken of her neck, and was prescribed muscle relaxants for pain and discomfort.[8] Courts have routinely held that similar injuries and circumstances satisfy the guideline's requirement of bodily injury. See, e.g., United States v. Perkins, 132 F.3d 1324, 1326 (10th Cir.

trial court. This court normally reviews a finding of bodily injury for clear error, see United States v. Pandiello, 184 F.3d 682, 686 (7th Cir.1999), but because of Louis' failure to timely object to the enhancement, we review his claims under the plain error standard. See United States v. Elkins, 176 F.3d 1016, 1019 (7th Cir.1999).

8. Lutz also told the probation officers who prepared the PSRs that she does not believe "her life will ever be the same" as a result of her experience. She explained that she is apprehensive of people and her surroundings, and feels vulnerable. She is also less likely to go places by herself and feels less independent. Finally she told the officers that she continued to have nightmares about the incident and difficulty sleeping—to the extent that, in addition to the muscle relaxants, she was prescribed sleeping pills.

1997) (security guard sustained a "small laceration and bruising" and continued neck and shoulder pain); *United States v. Hoelzer,* 183 F.3d 880, 882–83 (8th Cir. 1999) (store clerk suffered bruises to her face, chest, and legs); *United States v. Hamm,* 13 F.3d 1126, 1128 (7th Cir.1994) (victim suffered bumps and bruises and had the wind knocked out of him); *United States v. Greene,* 964 F.2d 911, 912 (9th Cir.1992) (teller slapped twice in the face, suffering pain for more than a week); *United States v. Fitzwater,* 896 F.2d 1009, 1012 (6th Cir.1990) (teller hit her head and hip on a drawer after being ordered to lay down on the floor during a robbery); *but see, United States v. Lancaster,* 6 F.3d 208 (4th Cir.1993) (security guard who was sprayed with mace did not suffer bodily injury). Moreover, we are convinced that the injury Lutz suffered is one which would ordinarily necessitate medical attention, not only because of the fact that an injured neck muscle is painful and warrants medical evaluation, but also to ensure that a more serious condition, such as a fractured vertebrae or herniated disk, did not exist. We are confident that is why the doctor ordered an x-ray of Lutz' neck and why she sought medical attention. Defendants–Appellants Louis and Adonis have failed to offer any compelling argument why a neck injury would not constitute a type of injury "for which medical attention ordinarily would be sought" and, based on the record before us, we refuse to hold that the district court erred in enhancing the defendants' base offense levels by two under § 2B3.1(b)(3)(A).

As noted previously in the opinion, Louis' trial counsel failed to object to the two-level sentencing enhancement imposed because of the neck injury Lutz suffered. Louis attempts to characterize this failure as ineffective assistance of counsel. In *United States v. Boyles,* 57 F.3d 535, 551 (7th Cir.1995), this court refused "to second-guess [the defendant's] attorney's [trial] strategy on review" because while an appellate court "may have conducted [the defendant's] defense differently," that is not the question on appeal. Rather, the question on appeal is whether defense counsel can be categorized as ineffective for not objecting to a judge's sentencing decision that is determined, on appeal, to be correct. As cases like *Boyles, United States v. Draves,* 103 F.3d 1328, 1335–36(7th Cir.), *cert. denied,* 521 U.S. 1127, 117 S.Ct. 2528, 138 L.Ed.2d 1028 (1997), and *United States v. Allender,* 62 F.3d 909, 915(7th Cir.1995) hold, the answer is no. Accordingly, because the district court properly applied § 2B3.1(b)(3)(A) to both defendants, the fact that Louis' counsel did not object to the enhancement cannot form the basis of an ineffective assistance of counsel claim. From our review of the record, we are convinced that Louis' counsel did provide him with the effective assistance.

## IV. CONCLUSION

The actions of the trial judge were not clearly erroneous when he enhanced the defendants' offense levels under U.S.S.G. § 2B3.1(b)(3)(A) nor was Louis' counsel ineffective for failing to object to this proper enhancement. Accordingly, the defendants' convictions and sentences are

AFFIRMED.