OPINION OF THE COURT
SCIRICA, Chief Judge.
At issue is whether a criminal sentence served in an alternative housing facility such as a halfway house can qualify as “a prior sentence of imprisonment” under § 4A1.1 of the U.S. Sentencing Guidelines for the purpose of calculating the criminal history score. In two separate cases before us, United States v. Schnupp, No. 03-1964, and United States v. Wormsley, No. 03-3384, defendants contend their prior sentences served in halfway houses should be classified under § 4A1.1 as “prior sentences,” not “prior sentences of imprisonment.” Defendants seek to vacate and remand for resentencing. We will affirm.
I.
A.
Andrea Schnupp pled guilty to fraudulently receiving Social Security benefit payments in violation of 42 U.S.C. § 408(a)(5).[1] The presentence report (PSR) designated an adjusted offense level of 8 and a criminal history score of 7— three points under U.S.S.G. § 4Al.l(a) for a 1998 narcotics conviction; one point under § 4Al.l(c) for a conviction for resisting arrest and disorderly conduct; two points under § 4Al.l(d) for committing the instant offense while on parole; and one point under § 4Al.l(e) for committing the instant offense within two years of being released from a sentence of imprisonment. Schnupp’s sentencing guideline range was 10-16 months.
Schnupp contests the assignment of criminal history points on her 1998 state narcotics conviction. In 1998, a state judge sentenced Schnupp to three consecutive six-month terms of imprisonment in the Allegheny County jail. See 42 Pa. Cons.Stat. § 9762(3).[2] But the judge also permitted alternative housing. The state court’s judgment[3] reads:
And now [count two] Jan 08 1998, in open court, defendant appearing with *333 counsel, sentenced to pay a fine of d/k to the Commonwealth. Pay costs of prosecution and undergo an imprisonment of 6 mos in the Allegheny County Jail and stand committed. Eff 3-9-98. And now [count three] Jan 08 1998, in open court, defendant appearing with counsel, sentenced to pay a fine of to the Commonwealth. Pay costs of prosecution and undergo an imprisonment of 6 mos in the Allegheny County Jail and stand committed. Consec. [consecutive] Ct 2 with work release[.] And now [count four] Jan 08 1998, in open court, defendant appearing with counsel, sentenced to pay a fíne of 6%<t to the Commonwealth. Pay costs of prosecution and undergo an imprisonment of 6 mos in the Allegheny County Jail and stand committed. Consec. Ct S[] Alt hsng [alternative housing] as arranged with work release[.]
Schnupp served her sentence by spending 15 months at the Alcohol Rehabilitation House (“ARC House”), a halfway house that permits work release and judicially authorized holiday passes.
Schnupp contends the plain meaning of “sentence of imprisonment” in U.S.S.G. § 4Al.l(a) requires actual imprisonment in a prison or jail. Because she served her sentence in a halfway house, not a jail, she argues, her prior sentence does not qualify as a “sentence of imprisonment” under § 4Al.l(a), and her 1998 conviction should be classified instead as a “prior conviction” under § 4Al.l(c). With this reclassification, Schnupp would have received only four criminal history points,[4] placing her in criminal history category III rather than IV. With an offense level of 8, her guideline sentencing range would have been 6-12 months instead of 10-16 months, and she would have been eligible for probation together with home detention, intermittent confinement, or community confinement.
The District Court rejected Schnupp’s argument and assigned her a split sentence of five months imprisonment followed by five months of home detention, three years of supervised release, and restitution of $25,900. Schnupp appealed, seeking to vacate and remand.
B.
Eric Lamar Wormsley pled guilty to possession of a firearm in violation of 18 U.S.C. § 922(g) and possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Wormsley’s PSR calculated his base offense level at 21 and his criminal history score at 10. Wormsley was assigned two criminal history points each under § 4Al.l(b) for his prior convictions in 1996, 1997 and 1998; one point each under § 4Al.l(c) for prior convictions in 1997 and 1999; and two points under § 4Al.l(e) for committing the instant offense while on probation, for a total of ten criminal history points. This placed Wormsley in criminal history category V, and combined with the offense level of 21, resulted in a guideline range of 70-87 months of imprisonment.
Wormsley objected to the assignment of two criminal history points to his 1998 conviction. The state court judge sentenced Wormsley[5] as follows:
And now 8-3-99, Defendant sentenced to pay a fine of 6%t to the Common *334 wealth. Pay costs of prosecution, and undergo an imprisonment of not less than S or more than 6 months in the Allegheny County Jail and stand committed. [EJffective 9-H-99. Defendant is permitted Alternative Housing at ARC-Goodwillr-ACTA. Defendant to pay costs.
Wormsley raised the same argument as did Schnupp. Because he served his sentence in ARC House, Wormsley contended the 1998 prior sentence should not be categorized as a “sentence of incarceration of at least sixty days” as specified by § 4Al.l(b), but rather as a “prior sentence” under § 4Al.l(c). Under this calculation, his criminal history score would have been 9, his adjusted offense level 21, and his sentencing guideline range 57-71 months instead of 70-87 months. The District Court rejected this argument and sentenced Wormsley to 80 months in prison. Wormsley timely appealed.
II.
We have jurisdiction under 28 U.S.C. § 1291. In addition, 18 U.S.C. §§ 3742(a)(1) and (a)(2) confer appellate jurisdiction to review criminal sentences. We exercise plenary review of the interpretation of the sentencing guidelines. United States v. Figueroa, 105 F.8d 874, 875-76 (3d Cir.1997). We review deferentially the District Court’s application of the guidelines to the facts, applying the clear error standard. Buford v. United States, 532 U.S. 59, 64, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001); United States v. Zats, 298 F.3d 182, 185 (3d Cir.2002).
III.
A.
U.S.S.G. § 4A1.1 provides the following instructions to calculate criminal history scores for sentencing purposes:
The total points from items (a) through (f) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.
(a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
(b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
(c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item.
(d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.
(e) Add 2 points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b) or while in imprisonment or escape status on such a sentence. If 2 points are added for item (d), add only 1 point for this item.
U.S.S.G. § 4A1.1 (2003). The sentencing guidelines define the term “prior sentence” as “any sentence previously imposed upon adjudication of guilt.” Id. § 4A1.2(a)(l).
At issue is how to define the term “sentence of imprisonment” found in §§ 4Al.l(a) and (b) for criminal' history scoring purposes. Defendants claim that a “sentence of imprisonment” must be spent in a prison, jail or jail-type institution in order to assign criminal history points under §§ 4Al.l(a) or (b). They argue that time served at an alternative housing facility, such as a halfway house, should not qualify as “imprisonment,” even if the pronounced sentence initially assigned them to a prison or jail. They maintain they did not serve a “sentence of imprisonment” at *335 ARC House because they were never confined in a jail-type institution.
Although § 4A1.2 does not define the term “sentence of imprisonment,” the commentary for § 4A1.1 provides, “[t]he definitions and instructions in § 4A1.2 govern the computation of the criminal history points. Therefore, §§ 4A1.1 and 4A1.2 must be read together.” U.S.S.G. § 4A1.1, cmt. (2003). Section 4A1.2(b) states, “[t]he term ‘sentence of imprisonment’ means a sentence of incarceration and refers to the maximum sentence imposed.” U.S.S.G. § 4A1.2(b) (2003). The guidelines provide no further guidance on whether a “sentence of incarceration” for these purposes requires confinement in a prison or jail. Black’s Law Dictionary defines “imprisonment” as “[t]he act of confining a person, esp. in a prison; the state of being confined.” Black’s Law Dictionary 760 (7th ed.1999). “Incarceration” is similarly defined as “[t]he act or process of confining someone.” Id. at 764. A person may be confined if he is “[held] within bounds [or] restrain[ed] from exceeding boundaries.” Id. at 476. Nevertheless, neither the guidelines, its commentary, nor common usage reflect whether the term “sentence of imprisonment” or “sentence of incarceration” refers to the initial pronouncement of sentence, the type or location of confinement, or the conditions of confinement.
The Commission has offered some guidance, although not in its official commentary. In Supplemental Illustrations on Criminal History Scores, the Commission stated that the sentencing court’s pronouncement of sentence controls when calculating criminal history, not the manner in which or location where the sentence is served.[6] Example D.5 of the Supplementary Illustrations states:
Residence in a halfway house [when assigned as a condition of probation] is treated as a non-imprisonment sentence for purposes of criminal history. Had the defendant been sentenced to imprisonment with a recommendation for halfway house placement, the sentence would be treated as a sentence of imprisonment.
United States Sentencing Commission, Siipplementary Illustrations on Criminal History 17 (Dec.1987). According to the illustration, an additional condition or recommendation specified by the judge should not alter the status of the sentence as one of “imprisonment.” The decisive factor apparently is whether the initial sentence was one of imprisonment or probation.
In its publication, Questions Most Frequently Asked About the Sentencing Guidelines, the Commission addressed whether alternative sentences counted as imprisonment for sentencing purposes.
If the offender was sentenced to imprisonment and as part of the term of imprisonment was placed on work release status, this would be treated as a sentence of imprisonment. If the sentence did not involve a term of imprisonment (e.g., a sentence of probation with a condition requiring residency in a halfway house), the sentence would not be considered imprisonment and would fall under § 4Al.l(c). A sentence of residency in a halfway house is not considered imprisonment (see Background Commentary to § 4A1.1 (second paragraph)).
United States Sentencing Commission, Questions Most Frequently Asked About the Sentencing Guidelines, Vol. VII, question 76 (June 1, 1994). According to the Questions, therefore, a sentence of probation or sentence to a halfway house is not considered imprisonment, while a sentence *336 of imprisonment which stipulates or permits alternative treatment is treated as a sentence of imprisonment for criminal history calculation.
As noted, neither the Supplemental Illustrations nor the Most Frequently Asked Questions are binding. Still, one other section of the guidelines demonstrates a preference for reliance on the sentencing judge’s pronouncement of sentence for calculation purposes, rather than on the location or manner of service by the defendant. Application Note 2 to § 4A1.2 instructs the court to determine the length of the sentence by looking at the stated maximum of the pronounced sentence, not at the length of the sentence actually served by the defendant.[7]
Reliance on the pronouncement of sentence rather than on the manner or location of service is likely to yield more consistent application of the guidelines. As noted, the judges here sentenced defendants to terms of imprisonment but granted permission to serve the sentences in an alternative housing facility. Under Pennsylvania law, the Allegheny County jail had discretion to designate alternate housing. See Commonwealth v. Koskey, 571 Pa. 241, 812 A.2d 509, 512 n. 3 (2002) (“In Allegheny County, alternative housing is governed by the County Jail Oversight Board pursuant to 16 P.S. § 6004-A.”).[8] This discretion in determining a defendant’s eligibility for alternate housing may be guided by several factors including assessment of the defendant, availability of space, and levels of restriction. See United States v. Urbizu, 4 F.3d 636, 639 (8th Cir.1993); United States v. Schomburg, 929 F.2d 505, 507 (9th Cir.1991). If the manner or location of service should define “sentence of imprisonment,” then a “prior sentence of imprisonment” could be determined by variables like availability of space. On the other hand, reliance on the pronouncement of sentence will promote consistency in application of the guidelines.
B.
Defendants rely on Application Note 2 to § 4A1.2 to support their assertion that time must be served in a prison or jail to be classified as a “sentence of imprisonment.” Application Note 2 reads:
To qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence (or, if the defendant escaped, would have served time). See § 4A1.2(a)(3) and (b)(2).
U.S.S.G. § 4A1.2, appl. n.2 (2003). Defendants contend the directive that “the defendant must have actually served a period of imprisonment” addresses the situs and manner of the sentence and requires service in a jail-type institution, not an alternative housing facility like a halfway house. But this argument does not address the meaning of “imprisonment” or the type, nature or level of confinement. A straightforward reading of Application Note 2 is that it refers to a temporal concept - the period of time the defendant served or would have served in the event of an escape.
*337 The citation at the end of Application Note 2 refers to §§ 4A1.2(a)(3) and (b)(2). Section 4A1.2(a)(3) provides that, for criminal history computation purposes, sentences that have been suspended should be classified as “prior sentences,” not “prior sentences of imprisonment.”[9] Section 4A1.2(b)(2) specifies that, where part of a sentence is suspended, that portion is properly excluded in calculating the sentence’s length. As a result, suspended incarceration time that was not served in any facility is not counted as prison time. United States v. Jones, 107 F.3d 1147, 1167 (6th Cir.1997) (Krupansky, J., dissenting) (“[Suspended incarceration time will not be served anywhere, and hence is not counted as prison sentence time.”). Sections 4A1.2(a)(3) and (b)(2) do not distinguish between sentences “actually served” in a jail-type institution and sentences served in an alternate housing facility. Therefore Application Note 2 cannot support the proposition that § 4A1.1 requires a sentence to be served in a jail-type institution. See Urbizu, 4 F.3d at 638 (rejecting a similar argument regarding Application Note 2 and holding that a sentence of imprisonment served on work release was a “sentence of imprisonment”).
Defendants also claim that Application Note 6 to § 4A1.1 dictates that a sentence of imprisonment under §§ 4Al.l(a) and (b) must be served in a prison or jail, not a halfway house. Application Note 6 instructs:
Subdivisions (a), (b), and (c) of § 4A1.1 distinguish confinement sentences longer than one year and one month, shorter confinement sentences of at least sixty days, and all other sentences, such as confinement sentences of less than sixty days, probation, fines, and residency in a halfway house.
U.S.S.G. § 4A1.1, appl. n.6 (2003). But Application Note 6 does not specify that it is the manner in which a sentence is served that dictates whether a sentence is a “sentence of imprisonment.” Furthermore, the Note contains no definition of confinement. Application Note 6 does not advance defendants’ argument.
IV.
The pronounced sentence, therefore, determines the criminal history score. A sentence to prison or jail is “sentence of imprisonment” under § 4Al.l(a) and (b) and results in the assignment of additional points, whether or not permission is given for work release, furlough or placement in a less restrictive alternative facility.
The sentencing judges here imposed upon each defendant a sentence of imprisonment in the Allegheny County jail.[10] Both Wormsley and Schnupp re *338 ceived prior sentences of imprisonment under § 4Al.l(a) and (b), respectively, plus additional points under § 4Al.l(e). The District Court properly held that defendants’ prior sentences of imprisonment increased their criminal history calculations.
y.
Other courts of appeals have relied on the pronouncement of sentence, not the location or manner of service, in calculating the criminal history score. In United States v. Schomburg, the Court of Appeals for the Ninth Circuit held that a defendant’s prior sentence to a county jail was properly classified as a “sentence of imprisonment” under § 4Al.l(b) even though the defendant served his sentence by participating in a weekend work project administered by the sheriff. 929 F.2d 505, 507 (9th Cir.1991). The court held that, while the sheriff had the discretion to modify the defendant’s sentence, it was “the sentence, as pronounced by the court at the outset” that determined its classification under the guidelines. Id. at 507; see also United States v. Latimer, 991 F.2d 1509, 1515 (9th Cir.1993).
Similarly, in United States v. Urbizu, the defendant was sentenced to a six-month term of imprisonment in a “jail type institution” but instead served five months in a halfway house. 4 F.3d at 638. The Court of Appeals for the Eighth Circuit found that Application Note 2 to § 4A1.2 could not be used by the defendant “to characterize his five-month stint in a halfway house as something other than imprisonment.” Id. In affirming the district court’s reliance on the sentencing court’s written judgment in awarding two criminal history points under § 4Al.l(b), the court held that the nature of a defendant’s prior confinement should be determined by the prior sentencing court’s pronouncement of sentence. Id.
In United States v. Ruffin, the Court of Appeals for the District of Columbia considered the prior sentence of the defendant “for imprisonment for a period of (1) one year. Work release ordered. Hours: 6:00 AM thru 6:00 PM Monday thru Friday.” 40 F.3d 1296, 1299 (D.C.Cir.1994). The court concluded the defendant “actually served a period of imprisonment” for criminal history calculation purposes, even though he was allowed to leave the facility on a weekday work release pass. Id.
The Courts of Appeals for the Fifth and Sixth Circuits have stated in dicta that the original pronounced sentence, not the judge’s recommendation or the actual location or manner of serving the sentence, should be relied upon for sentencing guideline calculations. See United States v. Valdez-Valdez, 143 F.3d 196, 202 n. 41 (5th Cir.1998) (“We note in passing that Valdez did not argue that his work release was *339 not a ‘sentence of imprisonment’ under the Guidelines. Such an argument would likely fail as well.”); United States v. Rasco, 963 F.2d 132, 136 n. 4 (6th Cir.1992) (“Had the defendant been sentenced to imprisonment with a recommendation for halfway house placement, the sentence would be treated as a sentence of imprisonment.”).
Defendants cite to United States v. Pielago, 135 F.3d 703 (11th Cir.1998), for the proposition that a sentence to a halfway house is not a “sentence of imprisonment.” In Piélago, the Court of Appeals for the Eleventh Circuit held that a prior term of confinement in a community treatment center cannot be treated as a “sentence of imprisonment” under § 4A1.1. Id. at 705. But the court based its decision on the assumption that the sentencing judge sentenced the defendant directly to the community treatment center. Id. at 712-13 (“Pielago’s stay in a community treatment center was not the consequence of a parole violation. He was sentenced directly to that confinement.”). This distinction is essential. Here, Schnupp and Wormsley were sentenced directly to imprisonment in the Allegheny County jail with permission for work release and alternative housing.
One court of appeals has interpreted “imprisonment” to denote time actually spent in a prison. See United States v. Elkins, 176 F.3d 1016 (7th Cir.1999). But the facts in Elkins differ substantially from those here. In Elkins, the defendant was sentenced to twenty-four months imprisonment, plus five years of supervised confinement upon his release from confinement, with the first 120 days of supervised release to be served in a community correctional center. Id. at 1019. The defendant argued that community confinement was a form of imprisonment, so the two components of his sentence were redundant. The court rejected this argument, drawing a distinction between the sentence of imprisonment and subsequent sentence to community confinement upon the defendant’s release. Id. at 1020. The court found that community center confinement resulted from an order of supervision related to supervised release and was not an additional term of imprisonment. Id. at 1021. In contrast, defendants here were sentenced directly to jail and permitted to serve that imprisonment term in an alternative housing facility.
VI.
The sentencing judges correctly applied the sentencing guidelines in calculating the defendants’ criminal history scores. We will affirm the judgments of conviction and sentences in both United States v. Schnupp and United States v. Wormsley.

. From December 1997 to May 2001, Schnupp had withdrawn approximately $26,942.80 in Social Security funds from her son’s direct deposit account after her son had become self-sustaining and employed.

. 42 Pa. Cons.Stat. § 9762 specifies:
All persons sentenced to total or partial confinement for:
(3) maximum terms of less than two years shall be committed to a county prison within the jurisdiction of the court except that as facilities become available on dates and in areas designated by the Governor in proclamations declaring the availability of State correctional facilities, such persons may be committed to the Bureau of Correction for confinement.

.The portions appearing in italics were either handwritten or added with a date stamp to the pre-printed form.

. Schnupp contends she should have received one point each under § 4Al.l(c) for the prior 1998 narcotics conviction and the 1993 resisting arrest and disorderly conduct conviction, and two points under § 4Al.l(d) because the offense was committed while on probation, for a total of four criminal history points.

. Portions in italics were handwritten on the preprinted form.

. The Commission issued, but did not officially adopt as commentary, the Supplementary Illustrations to accompany the 1987 Guidelines.

. Application Note 2 reads:
For the purposes of applying § 4Al.l(a), (b), or (c), the length of a sentence of imprisonment is the stated maximum ... That is, criminal history points are based on the sentence pronounced, not the length of time actually served. See § 4A1.2(b)(1) and (2).
U.S.S.G. § 4A1.2, appl. n.2 (2003).

. See also Testimony of John Ross, ARC House Director of Admissions ("[T]he judge sentences everybody to the Allegheny County Jail for a term of imprisonment and recommends alternative housing. It’s up to the jail to determine whether or not they would be eligible for alternative housing and Ms. Schnupp was.”).

. Section 4A1.2(a)(3) states: "A conviction for which the imposition or execution of a sentence was totally suspended or stayed shall be counted as a prior sentence under § 4Al.l(c).” Section 4A1.2(b)(2), in turn, specifies: "If part of a sentence of imprisonment was suspended, 'Sentence of imprisonment’ refers only to the portion that was not suspended."

. ARC House Director of Admissions John Ross described the procedure by which Ms. Schnupp was sentenced by the judge and housed at ARC House:
Q: Based on your review and your knowledge of ARC House and the Allegheny County prison system, was Ms. Schnupp sentenced to a term of imprisonment?
A: Yes. The way that works is the judge sentences everybody to the Allegheny County Jail for a term of imprisonment and recommends alternative housing. It's up to the jail to determine whether or not they would be eligible for alternative housing and Ms. Schnupp was.
Q: Was Ms. Schnupp free to come and go at her own choosing from ARC House when she was there?
*338 A: No, she is not. She has to have permission to do so both by the Court and by the staff at ARC House.
Q: What would have happened if Ms. Schnupp would have left without that permission?
A: We would have went back to the judge and reported her as an escaped prisoner. A warrant would have been issued. We would also have notified the Allegheny County Jail and the county police.
Q: Was Ms. Schnupp, while at your facility, considered an inmate of the Allegheny County Jail?
A: Yes, she is an. open file and a record is kept on her. When I get her out of jail, she is released to my custody. I have to sign for her release.
Q: To your knowledge, did Judge McGre-gor have the option to sentence Ms. Schnupp to intermediate punishment in this case?
A: Yes, sir.
Q: Did he do so?
A: No, sir.