

Opinions of the United
States Court of Appeals
for the Third Circuit

5-18-2004

# USA v. Schnupp

Precedential or Non-Precedential: Precedential

Docket No. 03-1964

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Schnupp" (2004). *2004 Decisions.* Paper 658.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/658

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 03-1964 & 03-3384

UNITED STATES OF AMERICA
v.
ANDREA SCHNUPP,
a/k/a ANDREA LYLE

Andrea Schnupp,
        Appellant at No. 03-1964

UNITED STATES OF AMERICA
v.
ERIC LAMAR WORMSLEY,
a/k/a Michael Wormsley,
a/k/a Michael Wallace

Eric Lamar Wormsley,
        Appellant at No. 03-3384

On Appeal from the
United States District Court for the
Western District of Pennsylvania
D.C. Criminal No. 02-cr-00279
(Honorable Donetta W. Ambrose)
D.C. Criminal No. 02-cr-00203
(Honorable Maurice B. Cohill, Jr.)

Argued February 9, 2004

Before: SCIRICA, *Chief Judge*,
ROTH and McKEE, *Circuit Judges*

(Filed May 18, 2004)

Karen S. Gerlach, Esquire (Argued)
Office of Federal Public Defender
1450 Liberty Center
1001 Liberty Avenue
Pittsburgh, Pennsylvania 15222
        Attorney for Appellants

Christine A. Sanner, Esquire (Argued)
Bonnie R. Schlueter, Esquire
Office of United States Attorney
700 Grant Street, Suite 400
Pittsburgh, Pennsylvania 15219
        Attorneys for Appellee

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

At issue is whether a criminal sentence served in an alternative housing facility such as a halfway house can qualify as "a prior sentence of imprisonment" under § 4A1.1 of the U.S. Sentencing Guidelines for the purpose of calculating the criminal history score. In two separate cases before us, *United States v. Schnupp,* No. 03-1964, and *United States v. Wormsley,* No. 03-3384, defendants contend their prior sentences served in halfway houses should be classified under § 4A1.1 as "prior sentences," not "prior sentences of imprisonment." Defendants seek to vacate

and remand for resentencing. We will affirm.

## I.

### A.

Andrea Schnupp pled guilty to fraudulently receiving Social Security benefit payments in violation of 42 U.S.C. § 408(a)(5).[1] The presentence report (PSR) designated an adjusted offense level of 8 and a criminal history score of 7 – three points under U.S.S.G. § 4A1.1(a) for a 1998 narcotics conviction; one point under § 4A1.1(c) for a conviction for resisting arrest and disorderly conduct; two points under § 4A1.1(d) for committing the instant offense while on parole; and one point under § 4A1.1(e) for committing the instant offense within two years of being released from a sentence of imprisonment. Schnupp's sentencing guideline range was 10-16 months.

Schnupp contests the assignment of criminal history points on her 1998 state narcotics conviction. In 1998, a state judge sentenced Schnupp to three consecutive six-month terms of imprisonment in the Allegheny County jail. *See* 42 Pa. Cons. Stat. § 9762(3).[2]

_____

[1]From December 1997 to May 2001, Schnupp had withdrawn approximately $26,942.80 in Social Security funds from her son's direct deposit account after her son had become self-sustaining and employed.

[2]42 Pa. Cons. Stat. § 9762 specifies:
All persons sentenced to total or

But the judge also permitted alternative housing. The state court's judgment[3] reads:

> And now [count two] *Jan 08 1998,* in open court, defendant appearing with counsel, sentenced to pay a fine of *6¼¢* to the Commonwealth. Pay costs of prosecution and undergo an imprisonment of *6 mos* in the Allegheny County *Jail* and stand committed. *Eff 3-9-98.*
>
> And now [count three] *Jan 08 1998,* in open court, defendant appearing with counsel, sentenced to pay a fine of *6¼¢* to the Commonwealth. Pay costs of prosecution and undergo an imprisonment of *6 mos* in the Allegheny County *Jail* and stand committed. *Consec. [consecutive] Ct 2 with work release[.]*

_____

partial confinement for:
. . .
(3) maximum terms of less than two years shall be committed to a county prison within the jurisdiction of the court except that as facilities become available on dates and in areas designated by the Governor in proclamations declaring the availability of State correctional facilities, such persons may be committed to the Bureau of Correction for confinement.

[3]The portions appearing in italics were either handwritten or added with a date stamp to the pre-printed form.

2

And now [count four] *Jan 08 1998, in open court, defendant appearing with counsel, sentenced to pay a fine of 6¼¢ to the Commonwealth. Pay costs of prosecution and undergo an imprisonment of 6 mos in the Allegheny County Jail and stand committed. Consec. Ct 3[.] Alt hsng [alternative housing] as arranged with work release[.]*

Schnupp served her sentence by spending 15 months at the Alcohol Rehabilitation House ("ARC House"), a halfway house that permits work release and judicially authorized holiday passes.

Schnupp contends the plain meaning of "sentence of imprisonment" in U.S.S.G. § 4A1.1(a) requires actual imprisonment in a prison or jail. Because she served her sentence in a halfway house, not a jail, she argues, her prior sentence does not qualify as a "sentence of imprisonment" under § 4A1.1(a), and her 1998 conviction should be classified instead as a "prior conviction" under § 4A1.1(c). With this reclassification, Schnupp would have received only four criminal history points,[4] placing her in criminal history category III rather than

---

[4]Schnupp contends she should have received one point each under § 4A1.1(c) for the prior 1998 narcotics conviction and the 1993 resisting arrest and disorderly conduct conviction, and two points under § 4A1.1(d) because the offense was committed while on probation, for a total of four criminal history points.

IV. With an offense level of 8, her guideline sentencing range would have been 6-12 months instead of 10-16 months, and she would have been eligible for probation together with home detention, intermittent confinement, or community confinement.

The District Court rejected Schnupp's argument and assigned her a split sentence of five months imprisonment followed by five months of home detention, three years of supervised release, and restitution of $25,900. Schnupp appealed, seeking to vacate and remand.

**B.**

Eric Lamar Wormsley pled guilty to possession of a firearm in violation of 18 U.S.C. § 922(g) and possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Wormsley's PSR calculated his base offense level at 21 and his criminal history score at 10. Wormsley was assigned two criminal history points each under § 4A1.1(b) for his prior convictions in 1996, 1997 and 1998; one point each under § 4A1.1(c) for prior convictions in 1997 and 1999; and two points under § 4A1.1(e) for committing the instant offense while on probation, for a total of ten criminal history points. This placed Wormsley in criminal history category V, and combined with the offense level of 21, resulted in a guideline range of 70-87 months of imprisonment.

Wormsley objected to the assignment of two criminal history points

to his 1998 conviction. The state court judge sentenced Wormsley[5] as follows:

> And now *8-3-99,* Defendant sentenced to pay a fine of *6¼¢* to the Commonwealth. Pay costs of prosecution, and undergo an imprisonment of not less than *3* or more than *6 months* in the Allegheny County *Jail* and stand committed. *[E]ffective 9-14-99. Defendant is permitted Alternative Housing at ARC-Goodwill-ACTA. Defendant to pay costs.*

Wormsley raised the same argument as did Schnupp. Because he served his sentence in ARC House, Wormsley contended the 1998 prior sentence should not be categorized as a "sentence of incarceration of at least sixty days" as specified by § 4A1.1(b), but rather as a "prior sentence" under § 4A1.1(c). Under this calculation, his criminal history score would have been 9, his adjusted offense level 21, and his sentencing guideline range 57-71 months instead of 70-87 months. The District Court rejected this argument and sentenced Wormsley to 80 months in prison. Wormsley timely appealed.

## II.

We have jurisdiction under 18 U.S.C. § 1291. In addition, 18 U.S.C. §§ 3742(a)(1) and (a)(2) confer appellate jurisdiction to review criminal sentences.

---

[5]Portions in italics were handwritten on the preprinted form.

We exercise plenary review of the interpretation of the sentencing guidelines. *United States v. Figueroa,* 105 F.3d 874, 875-76 (3d Cir. 1997). We review deferentially the District Court's application of the guidelines to the facts, applying the clear error standard. *Buford v. United States,* 532 U.S. 59, 64 (2001); *United States v. Zats,* 298 F.3d 182, 185 (3d Cir. 2002).

## III.

## A.

U.S.S.G. § 4A1.1 provides the following instructions to calculate criminal history scores for sentencing purposes:

> The total points from items (a) through (f) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.
>
> (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
>
> (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
>
> (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item.
>
> (d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

4

(e) Add 2 points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b) or while in imprisonment or escape status on such a sentence. If 2 points are added for item (d), add only 1 point for this item.

U.S.S.G. § 4A1.1 (2003). The sentencing guidelines define the term "prior sentence" as "any sentence previously imposed upon adjudication of guilt." *Id.* § 4A1.2(a)(1).

At issue is how to define the term "sentence of imprisonment" found in §§ 4A1.1(a) and (b) for criminal history scoring purposes. Defendants claim that a "sentence of imprisonment" must be spent in a prison, jail or jail-type institution in order to assign criminal history points under §§ 4A1.1(a) or (b). They argue that time served at an alternative housing facility, such as a halfway house, should not qualify as "imprisonment," even if the pronounced sentence initially assigned them to a prison or jail. They maintain they did not serve a "sentence of imprisonment" at ARC House because they were never confined in a jail-type institution.

Although § 4A1.2 does not define the term "sentence of imprisonment," the commentary for § 4A1.1 provides, "[t]he definitions and instructions in § 4A1.2 govern the computation of the criminal history points. Therefore, §§ 4A1.1 and 4A1.2 must be read together." U.S.S.G. § 4A1.1, cmt. (2003). Section 4A1.2(b)

states, "[t]he term 'sentence of imprisonment' means a sentence of incarceration and refers to the maximum sentence imposed." U.S.S.G. § 4A1.2(b) (2003). The guidelines provide no further guidance on whether a "sentence of incarceration" for these purposes requires confinement in a prison or jail. Black's Law Dictionary defines "imprisonment" as "[t]he act of confining a person, esp. in a prison; the state of being confined." *Black's Law Dictionary* 760 (7th ed. 1999). "Incarceration" is similarly defined as "[t]he act or process of confining someone." *Id.* at 764. A person may be confined if he is "[held] within bounds [or] restrain[ed] from exceeding boundaries." *Id.* at 476. Nevertheless, neither the guidelines, its commentary, nor common usage reflect whether the term "sentence of imprisonment" or "sentence of incarceration" refers to the initial pronouncement of sentence, the type or location of confinement, or the conditions of confinement.

The Commission has offered some guidance, although not in its official commentary. In *Supplemental Illustrations on Criminal History Scores,* the Commission stated that the sentencing court's pronouncement of sentence controls when calculating criminal history, not the manner in which or location where

5

the sentence is served.[6]  Example D.5 of the *Supplementary Illustrations* states:

> Residence in a halfway house [when assigned as a condition of probation] is treated as a non-imprisonment sentence for purposes of criminal history.  Had the defendant been sentenced to imprisonment with a recommendation for halfway house placement, the sentence would be treated as a sentence of imprisonment.

United States Sentencing Commission, *Supplementary Illustrations on Criminal History* 17 (Dec. 1987).  According to the illustration, an additional condition or recommendation specified by the judge should not alter the status of the sentence as one of "imprisonment."  The decisive factor apparently is whether the initial sentence was one of imprisonment or probation.

In its publication, *Questions Most Frequently Asked About the Sentencing Guidelines,* the Commission addressed whether alternative sentences counted as imprisonment for sentencing purposes.

> If the offender was sentenced to imprisonment and as part of the term of imprisonment was placed on work release status,

this would be treated as a sentence of imprisonment.  If the sentence did not involve a term of imprisonment (e.g., a sentence of probation with a condition requiring residency in a halfway house), the sentence would not be considered imprisonment and would fall under § 4A1.1(c).  A sentence of residency in a halfway house is not considered imprisonment (see Background Commentary to § 4A1.1 (second paragraph)).

United States Sentencing Commission, *Questions Most Frequently Asked About the Sentencing Guidelines,* Vol. VII, question 76 (June 1, 1994).  According to the *Questions*, therefore, a sentence of probation or sentence to a halfway house is not considered imprisonment, while a sentence of imprisonment which stipulates or permits alternative treatment is treated as a sentence of imprisonment for criminal history calculation.

As noted, neither the *Supplemental Illustrations* nor the *Most Frequently Asked Questions* are binding.  Still, one other section of the guidelines demonstrates a preference for reliance on the sentencing judge's pronouncement of sentence for calculation purposes, rather than on the location or manner of service by the defendant. Application Note 2 to § 4A1.2 instructs the court to determine the length of the sentence by looking at the stated maximum of the pronounced

---

[6]The Commission issued, but did not officially adopt as commentary, the *Supplementary Illustrations* to accompany the 1987 Guidelines.

sentence, not at the length of the sentence actually served by the defendant.[7]

Reliance on the pronouncement of sentence rather than on the manner or location of service is likely to yield more consistent application of the guidelines. As noted, the judges here sentenced defendants to terms of imprisonment but granted permission to serve the sentences in an alternative housing facility. Under Pennsylvania law, the Allegheny County jail had discretion to designate alternate housing. *See Commonwealth v. Koskey,* 812 A.2d 509, 512 n.3 (Pa. 2002) ("In Allegheny County, alternative housing is governed by the County Jail Oversight Board pursuant to 16 P.S. § 6004-A.").[8] This discretion in determining a

---

[7]Application Note 2 reads:

> For the purposes of applying § 4A1.1(a), (b), or (c), the length of a sentence of imprisonment is the stated maximum . . . That is, criminal history points are based on the sentence pronounced, not the length of time actually served. See § 4A1.2(b)(1) and (2).

U.S.S.G. § 4A1.2, appl. n.2 (2003).

[8]*See also* Testimony of John Ross, ARC House Director of Admissions ("[T]he judge sentences everybody to the Allegheny County Jail for a term of imprisonment and recommends alternative housing. It's up to the jail to determine whether or not they would be eligible for alternative housing and Ms. Schnupp was.").

defendant's eligibility for alternate housing may be guided by several factors including assessment of the defendant, availability of space, and levels of restriction. *See United States v. Urbizu,* 4 F.3d 636, 639 (8th Cir. 1993); *United States v. Schomburg,* 929 F.2d 505, 507 (9th Cir. 1991). If the manner or location of service should define "sentence of imprisonment," then a "prior sentence of imprisonment" could be determined by variables like availability of space. On the other hand, reliance on the pronouncement of sentence will promote consistency in application of the guidelines.

**B.**

Defendants rely on Application Note 2 to § 4A1.2 to support their assertion that time must be served in a prison or jail to be classified as a "sentence of imprisonment." Application Note 2 reads:

> To qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence (or, if the defendant escaped, would have served time). See § 4A1.2(a)(3) and (b)(2).

U.S.S.G. § 4A1.2, appl. n.2 (2003). Defendants contend the directive that "the defendant must have actually served a period of imprisonment" addresses the situs and manner of the sentence and requires service in a jail-type institution, not an alternative housing facility like a halfway house. But this argument does not address the meaning of "imprisonment" or

7

the type, nature or level of confinement. A straightforward reading of Application Note 2 is that it refers to a temporal concept — the period of time the defendant served or would have served in the event of an escape.

The citation at the end of Application Note 2 refers to §§ 4A1.2(a)(3) and (b)(2). Section 4A1.2(a)(3) provides that, for criminal history computation purposes, sentences that have been suspended should be classified as "prior sentences," not "prior sentences of imprisonment."[9] Section 4A1.2(b)(2) specifies that, where part of a sentence is suspended, that portion is properly excluded in calculating the sentence's length. As a result, suspended incarceration time that was not served in any facility is not counted as prison time. *United States v. Jones,* 107 F.3d 1147, 1167 (6th Cir. 1997) (Krupansky, J., dissenting) ("[S]uspended incarceration time will not be served anywhere, and hence is not counted as prison sentence time."). Sections 4A1.2(a)(3) and (b)(2) do not distinguish between sentences "actually served" in a jail-type institution

and sentences served in an alternate housing facility. Therefore Application Note 2 cannot support the proposition that § 4A1.1 requires a sentence to be served in a jail-type institution. *See Urbizu,* 4 F.3d at 638 (rejecting a similar argument regarding Application Note 2 and holding that a sentence of imprisonment served on work release was a "sentence of imprisonment").

Defendants also claim that Application Note 6 to § 4A1.1 dictates that a sentence of imprisonment under §§ 4A1.1(a) and (b) must be served in a prison or jail, not a halfway house. Application Note 6 instructs:

> Subdivisions (a), (b), and (c) of § 4A1.1 distinguish confinement sentences longer than one year and one month, shorter confinement sentences of at least sixty days, and all other sentences, such as confinement sentences of less than sixty days, probation, fines, and residency in a halfway house.

U.S.S.G. § 4A1.1, appl. n.6 (2003). But Application Note 6 does not specify that it is the manner in which a sentence is served that dictates whether a sentence is a "sentence of imprisonment." Furthermore, the Note contains no definition of confinement. Application Note 6 does not advance defendants' argument.

## IV.

The pronounced sentence, therefore, determines the criminal history score. A sentence to prison or jail is

---

[9]Section 4A1.2(a)(3) states: "A conviction for which the imposition or execution of a sentence was totally suspended or stayed shall be counted as a prior sentence under § 4A1.1(c)." Section 4A1.2(b)(2), in turn, specifies: "If part of a sentence of imprisonment was suspended, 'Sentence of imprisonment' refers only to the portion that was not suspended."

"sentence of imprisonment" under § 4A1.1(a) and (b) and results in the assignment of additional points, whether or not permission is given for work release, furlough or placement in a less restrictive alternative facility.

The sentencing judges here imposed upon each defendant a sentence of imprisonment in the Allegheny County jail.[10] Both Wormsley and Schnupp received prior sentences of imprisonment under § 4A1.1(a) and (b), respectively, plus additional points under § 4A1.1(e). The District Court properly held that defendants' prior sentences of imprisonment increased their criminal history calculations.

[10] ARC House Director of Admissions John Ross described the procedure by which Ms. Schnupp was sentenced by the judge and housed at ARC House:

> Q: Based on your review and your knowledge of ARC House and the Allegheny County prison system, was Ms. Schnupp sentenced to a term of imprisonment?
>
> A: Yes. The way that works is the judge sentences everybody to the Allegheny County Jail for a term of imprisonment and recommends alternative housing. It's up to the jail to determine whether or not they would be eligible for alternative housing and Ms. Schnupp was.
>
> Q: Was Ms. Schnupp free to come and go at her own choosing from ARC House when she was there?
>
> A: No, she is not. She has to have permission to do so both by the Court and by the staff at ARC House.
>
> Q: What would have happened if Ms. Schnupp would have left without that permission?
>
> A: We would have went back to the judge and reported her as an escaped prisoner. A warrant would have been issued. We would also have notified the Allegheny County Jail and the county police.
>
> Q: Was Ms. Schnupp, while at your facility, considered an inmate of the Allegheny County Jail?
>
> A: Yes, she is an open file and a record is kept on her. When I get her out of jail, she is released to my custody. I have to sign for her release.
> . . .
> Q: To your knowledge, did Judge McGregor have the option to sentence Ms. Schnupp to intermediate punishment in this case?
>
> A: Yes, sir.
>
> Q: Did he do so?
>
> A: No, sir.

## V.

Other courts of appeals have relied on the pronouncement of sentence, not the location or manner of service, in calculating the criminal history score. In *United States v. Schomburg,* the Court of Appeals for the Ninth Circuit held that a defendant's prior sentence to a county jail was properly classified as a "sentence of imprisonment" under § 4A1.1(b) even though the defendant served his sentence by participating in a weekend work project administered by the sheriff. 929 F.2d 505, 507 (9th Cir. 1991). The court held that, while the sheriff had the discretion to modify the defendant's sentence, it was "the sentence, as pronounced by the court at the outset" that determined its classification under the guidelines. *Id.* at 507; *see also United States v. Latimer,* 991 F.2d 1509, 1515 (9th Cir. 1993).

Similarly, in *United States v. Urbizu,* the defendant was sentenced to a six-month term of imprisonment in a "jail type institution" but instead served five months in a halfway house. 4 F.3d at 638. The Court of Appeals for the Eighth Circuit found that Application Note 2 to § 4A1.2 could not be used by the defendant "to characterize his five-month stint in a halfway house as something other than imprisonment." *Id.* In affirming the district court's reliance on the sentencing court's written judgment in awarding two criminal history points under § 4A1.1(b), the court held that the nature of a defendant's prior confinement should be determined by the prior sentencing court's pronouncement of sentence. *Id.*

In *United States v. Ruffin,* the Court of Appeals for the District of Columbia considered the prior sentence of the defendant "for imprisonment for a period of (1) one year. Work release ordered. Hours: 6:00 AM thru 6:00 PM Monday thru Friday." 40 F.3d 1296, 1299 (D.C. Cir. 1994). The court concluded the defendant "actually served a period of imprisonment" for criminal history calculation purposes, even though he was allowed to leave the facility on a weekday work release pass. *Id.*

The Courts of Appeals for the Fifth and Sixth Circuits have stated in dicta that the original pronounced sentence, not the judge's recommendation or the actual location or manner of serving the sentence, should be relied upon for sentencing guideline calculations. *See United States v. Valdez-Valdez,* 143 F.3d 196, 202 n.41 (5th Cir. 1998) ("We note in passing that Valdez did not argue that his work release was not a 'sentence of imprisonment' under the Guidelines. Such an argument would likely fail as well."); *United States v. Rasco,* 963 F.2d 132, 136 n.4 (6th Cir. 1992) ("Had the defendant been sentenced to imprisonment with a recommendation for halfway house placement, the sentence would be treated as a sentence of imprisonment.").

Defendants cite to *United States v. Pielago,* 135 F.3d 703 (11th Cir. 1998), for the proposition that a sentence to a halfway house is not a "sentence of imprisonment." In *Pielago,* the Court of Appeals for the Eleventh Circuit held that a prior term of confinement in a

10

community treatment center cannot be treated as a "sentence of imprisonment" under § 4A1.1. *Id.* at 705. But the court based its decision on the assumption that the sentencing judge sentenced the defendant directly to the community treatment center. *Id.* at 712-13 ("Pielago's stay in a community treatment center was not the consequence of a parole violation. He was sentenced directly to that confinement."). This distinction is essential. Here, Schnupp and Wormsley were sentenced directly to imprisonment in the Allegheny County jail with permission for work release and alternative housing.

One court of appeals has interpreted "imprisonment" to denote time actually spent in a prison. *See United States v. Elkins,* 176 F.3d 1016 (7th Cir. 1999). But the facts in *Elkins* differ substantially from those here. In *Elkins,* the defendant was sentenced to twenty-four months imprisonment, plus five years of supervised confinement upon his release from confinement, with the first 120 days of supervised release to be served in a community correctional center. *Id.* at 1019. The defendant argued that community confinement was a form of imprisonment, so the two components of his sentence were redundant. The court rejected this argument, drawing a distinction between the sentence of imprisonment and subsequent sentence to community confinement upon the defendant's release. *Id.* at 1020. The court found that community center confinement resulted from an order of supervision related to supervised release

and was not an additional term of imprisonment. *Id.* at 1021. In contrast, defendants here were sentenced directly to jail and permitted to serve that imprisonment term in an alternative housing facility.

## VI.

The sentencing judges correctly applied the sentencing guidelines in calculating the defendants' criminal history scores. We will affirm the judgments of conviction and sentences in both *United States v. Schnupp* and *United States v. Wormsley.*

UNITED STATES OF AMERICA v. ANDREA SCHNUPP, a/k/a ANDREA LYLE

Andrea Schnupp, Appellant at No. 03-1964

UNITED STATES OF AMERICA v. ERIC LAMAR WORMSLEY, a/k/a Michael Wormsley, a/k/a Michael Wallace

Eric Lamar Wormsley, Appellant at No. 03-3384

McKee, <u>Circuit Judge</u>, concurring.

I join in the analysis of my colleagues because I agree that the principles of statutory construction their analysis relies upon dictate the result in these cases. We therefore must hold that the "pronounced sentence. . . determines the criminal history score" for purposes of determining whether a prior sentence is a "sentence of imprisonment" under

U.S.S.G. § 4A1.1. However, I write separately to call attention to the fact that this result leads to unintended and unjust disparities in awarding criminal history points. These disparities arise because the manner of pronouncing sentences of imprisonment will often be governed by factors that have nothing to do with assessments that the guidelines attempt to incorporate into a defendant's criminal history category. As I shall explain, serendipity can often play as significant a role in the way a sentence is pronounced as the prior judge's assessment of the need to incarcerate.

Given the wording of § 4A1.1 and the structure of the sentencing guidelines, I doubt that Congress or the Sentencing Commission actually considered whether confinement in "alternative housing" is tantamount to a "sentence of imprisonment" for purposes of calculating a criminal history category when the guidelines were initially drafted. As my colleagues note, U.S.S.G. §§ 4A1.1(a) and (b) both refer to a "sentence of imprisonment . . . ." Yet, subsection (c) of that guideline refers only to "each prior sentence not counted in (a) or (b) . . . ." This certainly suggests that the "prior sentence" referenced in subsection (c) is to be distinguished from a "sentence of imprisonment." The latter obviously refers to incarceration in a prison or jail-type facility. The guideline therefore appears to distinguish between such incarceration and *other* sentences. However, as my colleagues explain, the applicable

principles of statutory construction require a different conclusion.

Had this precise question been considered when the guidelines were drafted, I believe subsection (c) would have been worded differently. At the very least, language would have been added to address alternative sentences by either distinguishing them from "prior sentence(s) of imprisonment," or specifically directing how such alternative confinement should be treated under § 4A1.1. Instead, the guidelines contain the "catch all" reference to "sentence[s] not counted in [§ 4A1.1] (a) or (b)."

We rely upon the pronounced sentence because we assume that pronouncement is the best way to determine the sentencing court's intent. We further assume that the sentencing judge's intent regarding where a defendant is to be confined is more germane to a subsequent criminal history category than whether the defendant was actually confined in a prison or jail-type facility as opposed to alternative housing. However, that pronouncement is not necessarily more relevant to a subsequent § 4A1.1 calculation than any accompanying sentencing recommendation. In fact, consideration of the actual place of confinement will often tell a subsequent court far more about a defendant's background than the precise language used in imposing a prior sentence.

In the cases before us, the sentencing judge did articulate that the defendants were to "undergo an

12

imprisonment [for] . . ." a given period. *See* Maj. Op. at 2-4. In Schnupp's case, the court added "[alternative housing] as arranged with work release." In Wormsley's case, the court stipulated that Wormsley was "permitted Alternative Housing at ARC . . . ." *Id*. Both defendants ultimately served their sentences in the alternative housing rather than the county jail, just as the judge recommended. A brief discussion of the manner in which judges pronounce sentences in Pennsylvania will demonstrate why that is more significant to a subsequent calculation under § 4A1.1 than the manner in which the sentences were pronounced.

Prior to 1990, a state trial judge in Pennsylvania had two options if he/she wanted to impose a sentence of confinement. The judge could either impose a state sentence or a county sentence. 42 Pa. C.S.A. § 9762. If the sentence that was imposed had a maximum period of incarceration of five or more years, it was deemed a state sentence and the defendant had to be incarcerated in a state prison. Such defendants were in the custody and control of the Pennsylvania Bureau of Corrections, and the Bureau therefore determined where the defendant would be incarcerated. If the sentence had a maximum term of less than two years, the defendant was to be "committed to a county prison within the jurisdiction of the court." 42 Pa. C.S.A. § 9762(3).[11]

---

Therefore, a sentencing judge lost authority to confine a defendant in alternative housing if the defendant received a "state sentence." However, a judge could sentence such a defendant to alternative housing by imposing a probationary sentence and ordering a certain period of residency at an appropriate alternative facility (including

---

than two years but less than five years could be committed to the state prison under the Bureau of Corrections or to a county prison within the jurisdiction of the court, at the discretion of the sentencing judge. 42 Pa. C.S.A. § 9762(2). Thus, when imposing such a sentence, a court also had authority to commit defendants to the Bureau of Corrections for confinement when "facilities become available . . .[as] designated by the Governor in proclamations declaring the availability of State correctional facilities. . . ." 42 Pa. C.S.A. § 9762(3).

Therefore, considerations of space could affect how a sentence was pronounced despite my colleagues' belief that relying upon the pronouncement rather than the place of confinement will negate such extraneous factors as availability of space. *See* Maj. Op. at 7 ("This discretion in determining a defendant's eligibility for alternate housing may be guided by several factors including assessment of the defendant, availability of space . . . ").

[11] Defendants who were sentenced to a maximum period of incarceration of more

successful completion of inpatient treatment) as a condition of probation.[12]

However, in 1990, the Pennsylvania legislature enacted 42 Pa. C.S.A. § 9763, which specifically permits a court to sentence a defendant receiving a county sentence to intermediate punishment or "partial confinement" in alternative housing such as a halfway house or inpatient program.[13] Accordingly, after 1990, a state judge in Pennsylvania who wanted a defendant to be confined in alternative housing rather than a jail or prison had several options. The judge could still give a probationary sentence and impose the condition of a given period of confinement in alternative housing including an inpatient treatment program. However, the judge could also impose a sentence of less than two years in jail and recommend that the defendant be transferred to alternative housing, or directly pronounce a period of confinement in alternative housing (with or without the component of inpatient treatment). For purposes of a subsequent inquiry under § 4A1.1, the only distinction between those sentences may well have been nothing more than the habits of different judges.

As noted above, the sentences here were pronounced as sentences of imprisonment with a recommendation that they be served in alternative housing, ARC House. However, even assuming that we can therefore conclude that the sentencing judges pronounced a "sentence of imprisonment," we still learn little about the particular offender. This is true because sentences may be pronounced in a particular manner simply to allow the alternative housing facility to be reimbursed under its contract with a given county. *See Commonwealth v. Garbisch*, No. CC 20010301 (Pa. Ct. of Common Pleas, Allegheny Cty., filed Feb. 6, 2003).[14]

In *Garbisch*, the sentencing judge entered into a discussion with the director

---

[12] I will elaborate upon the significance of this in greater detail below. For now, it suffices to note that, given sentencing regimes like the one in Pennsylvania prior to 1990, the distinction drawn by the Sentencing Commission in its *Supplemental Illustrations on Criminal History Scores* between imposing a stay at a halfway house as a condition of probation and pronouncing a jail sentence with a recommendation that the confinement be in a halfway house was often an illusory distinction at best, *see* Maj. Op. at 5-6, because it often said more about the authority of the sentencing judge than the culpability of the defendant.

[13] This change in the sentencing scheme is discussed in *Commonwealth v. Conahan*, 589 A.2d 1107, 1110 n.1 (Pa. 1991).

[14] *Garbisch* is an unreported opinion that may be found on the website kept by the Allegheny County Bar Association at http://www.acba.org/scripts/cr2br.pl?/opinion/03053004.opn.

of the Program for Female Offenders, a program maintained to provide alternative housing and rehabilitation options for female defendants "sentenced to serve periods of incarceration in the Allegheny County Jail." The program director explained that under the terms of his contract with Allegheny County, the warden of the county jail referred suitable inmates to the program for housing, and the program was then reimbursed by the county.[15] A judge who wanted to confine a defendant at the Program for Female Offenders was therefore compelled to pronounce a sentence of imprisonment in the county jail with a recommendation that she be transferred to alternative housing.[16]

That appears to be what happened in *Garbisch*, and it may explain why Schnupp's and Wormsley's sentences were pronounced as they were. In *Garbisch*, the court explained:

> The program is completely funded by the County through its payments for the

housing of inmates there. The County paid for the construction of the facility out of which the Program operates. For all practical purposes, the Program operates as an adjunct to the County Jail. The contract makes it clear that as such an adjunct, its operation is to be supervised by the Warden. . . . It is the Court that directs the Warden whether a particular defendant may be . . . released to serve the sentence at an alternative housing facility. . . .

*Garbisch,* at *3-4 (citing to 42 Pa. C.S.A. § 9751 et seq.).

The arrangement in *Garbisch* was dictated to a large extent by the jurisdiction of the Allegheny County Board of Prisons, which had ultimate jurisdiction over the jails in Allegheny County. The Board had, in turn, delegated some of that authority to the warden of the county jail. However, the legislation establishing that Board applies only to Pennsylvania cities of the second class, and therefore excludes most of the jurisdictions in Pennsylvania including the Commonwealth's largest jurisdiction, Philadelphia. It would therefore have been very misleading to afford sentencing pronouncements in Allegheny County the same significance as pronouncements in Philadelphia County irrespective of any

---

[15] Counties are more than willing to enter into such contracts with appropriate facilities because defendants can usually be housed for less money in the less secure facilities than in the county jail.

[16] Given the dialogue between the director of the program and the sentencing court, it appears that the Program could not accept inmates directly from court under the terms of its contract or under the administrative structure in Allegheny County at the time.

15

accompanying recommendation by the sentencing judge.

By way of further illustration, I note that my colleagues cite part of the discussion that occurred between the sentencing judge in Schnupp's case and John Ross, ARC's director of admissions. Ross explained the relationship between his program and the courts in Allegheny County. He explained that judges "sentence[] everybody to the Allegheny County Jail for a term of imprisonment and recommend[] alternative housing. It's up to the jail to determine whether or not they would be eligible for alternative housing and Ms. Schnupp was." Maj. Op. at 7 n.8. That arrangement arises from the particular relationship of county, sentencing judge, and program as well as the jurisdiction of the Allegheny County Board of Prisons.

I delve into this level of detail because it demonstrates the problems that are endemic in attaching too much significance to the manner of pronouncing an earlier sentence and ignoring an accompanying recommendation when subsequently attempting to calculate a sentence under § 4A1.1. If a defendant had been sentenced in Pennsylvania when a judge who wanted to impose a custodial sentence in alternative housing had to sentence a defendant to the county jail, "a sentence of imprisonment" may well have been pronounced with an appropriate "recommendation" for alternative housing. On the other hand, the defendant may have received an identical sentence pronounced as a sentence of probation conditioned upon residence in alternative housing or successful completion of an inpatient program.

Although one could argue that it is appropriate to distinguish the former from the latter because one situation involves a pronounced sentence of jail and the other a sentence of probation, that argument loses much of its force when we consider the situation after 1990. After 1990, the sentencing court could simply sentence a defendant to a period of intermediate punishment in alternative housing or an inpatient drug program. *See* 42 Pa. C.S.A. § 9763(c). Pennsylvania courts have concluded that the Pennsylvania legislature "intended imprisonment and intermediate punishment to be mutually exclusive, to be treated differently." *Commonwealth v. Koskey*, 812 A.2d 509, 513-14 (Pa. 2002). Accordingly, relying upon the definition of "imprisonment" under the sentencing law of Pennsylvania, a subsequent § 4A1.1 analysis would define the pre-1990 jail sentence with a recommendation for alternative housing as a prior "sentence of imprisonment." Yet, a subsequent sentence of confinement in alternative housing would not be a "prior sentence of imprisonment" under § 4A1.1. The difference stems from no offender characteristic and it tells us nothing about a prior judge's assessment of a defendant or the defendant's level of culpability. Rather, the distinction in the sentences pronounced arises entirely from the intervening change in the law or, as illustrated by *Garbisch*, from the contractual relationship of the entities

16

involved in carrying out a "sentence" of alternative housing. Therefore, I can not agree that "[r]eliance on the pronouncement of sentence rather than on the manner or location of service is likely to yield more consistent application of the guidelines." Maj. Op. at 7.

Moreover, this problem is not unique to Pennsylvania. Rather, the disparity is relevant when comparing various sentences from different states. A cursory comparison of various states' laws illustrates this.

In Kansas, a judge could not sentence a felony offender to alternative housing under state law at the time the defendant was sentenced in *State v. Fowler*, 710 P.2d 1268 (Kan. 1985). However, as in Pennsylvania before 1990, a judge could accomplish the same result by imposing a period of probation and conditioning the probation upon successful confinement in a residential center. The court in *Fowler* explained: "[i]f the trial court actually imposes a sentence of commitment and desires to place the defendant in a community corrections residential center, *it may do so only by placing the defendant on probation* and making confinement in the community corrections residential center a condition of his probation." *Id*. at 1274 (emphasis added). The court also stated:

> the legislative scheme . . . permits a sentencing court to utilize a community corrections center through the process of placing the

defendant on probation, but requires that confinement in the county corrections residential center be made a condition of probation. If a defendant is committed under a sentence, the commitment must be made to the custody of the Secretary of Corrections, who may then utilize community corrections facilities by contract in carrying out programs to rehabilitate a convicted felon.

*Id.* at 1276.

Similarly, in the District of Columbia, prisoners are sentenced to the custody of the Attorney General for a period of time and thereupon placed in the custody of the Corrections Department of the District of Columbia pursuant to a delegation of authority from the Attorney General to the Commissioner of the District. The Commissioner has statutory authority to transfer prisoners "to any available suitable or appropriate institution or facility (including a residential community treatment center). . .".[17]

Sentences pronounced under such sentencing schemes will later be "a prior sentence of imprisonment" under U.S.S.G.

---

[17] This authority is pursuant to a Department of Justice order. *See United States v. Venable*, 316 A.2d 857, 858 n.3 (App. D.C. 1974).

17

§ 4A1.1 because the prior sentencing judge lacked authority to sentence directly to a community sanctions facility, not because the judge intended to incarcerate a defendant in a jail-type facility. The actual intent to avoid "incarceration" is only revealed through the sentencing court's recommendation.

However, in Colorado (as in Pennsylvania after 1990), a sentencing judge can simply impose "[a] direct sentence to community corrections . . .". *Beecroft v. Colorado*, 874 P.2d 1041, 1045 (Colo. 1994).[18] Delaware also gives sentencing courts the authority to sentence directly to confinement in a halfway house or similar facility.[19] *See Walt v. State*, 727

A.2d 836, 838 (Del. 1999). Similarly, in certain instances, Ohio requires that a judge specifically state whether he or she is sentencing a defendant to a community-based facility such as a halfway house. In *State v. Salter*, 2000 WL 1038178 (Ohio App. Jul. 27, 2000), the court was reviewing a sentence imposed under Ohio Revised Code § 4511.99(A)(4)(a) pertaining to sentencing for drunk driving. The court stated: "When sentencing an offender to a mandatory term of local incarceration, the court shall specify whether the term is to be served in a jail, a community-based correctional facility, a halfway house, or an alternative residential facility." 2000 WL 1038178 at *1 (internal citation and quotation marks omitted). Similarly, under Ohio Revised Code § 2929.16, Ohio courts are specifically authorized to sentence first degree felons to "non-prison alternatives." *See State v. Winstead*, 2004 WL 720331 (Ohio App. Apr. 5, 2004).[20] That statute expressly authorizes the trial court to sentence certain felony offenders to a period of

---

[18] Any subsequent consideration of such a sentence under § 4A1.1 is further complicated by the fact that Colorado distinguishes non-residential status at a community correction facility from residential status at a community correction facility. *See generally People v. Hoecher*, 822 P.2d 8 (Colo. 1991). Colorado courts view community corrections programs as providing trial courts "with a sentencing medium that is more severe than probation, but not as harsh as incarceration." *Beecroft*, 874 P.2d at 1045.

[19] However, Delaware also takes the view that such a sentence constitutes "imprisonment" as that word is used in Article IV, Section 11(1)(b) of the Delaware Constitution, *id.*, for purposes of awarding "jail time" credit against a later

sentence. For a comprehensive discussion of the four general approaches to awarding jail time credit for confinement in alternative housing see *Arizona v. Reynolds*, 823 P.2d 681, 681-85 (Ariz. 1992).

[20] *Salter* and *Winstead* are unreported. However, I do not cite them for any precedential value. Rather, I refer to them merely because they show the manner in which some sentences have to be pronounced in Ohio.

confinement in alternative housing. *Id.* at *3.

Finally, the majority notes that the United States Sentencing Commission has addressed the issue of alternative sentences in the publication *Questions Most Frequently Asked About Sentencing Guidelines*. As my colleagues note, that publication states:

> If the offender was sentenced to imprisonment and as part of the term of imprisonment was placed on work release status, this would be treated as a sentence of imprisonment. If the sentence did not involve a term of imprisonment (e.g., a sentence of probation with a condition requiring residency in a halfway house), the sentence would not be considered imprisonment and would fall under § 4A1.1(c). A sentence of residency in a halfway house is not considered imprisonment . . . .

Maj. Op. at 6.

As I have discussed, this refers to the seemingly straightforward situation of a judge pronouncing a probationary sentence and simply imposing residency in alternative housing as a condition of that probation. However, problems can arise under § 4A1.1 even in this deceptively unambiguous situation. For example, in *People v. Sturdivant*, 312 N.W.2d 622, 623 (Mich. 1981), defendants were sentenced to terms of probation with a condition that six months of the probationary period be served in the county jail.[21] When sentenced, the applicable statute stated, "[a]s a condition of probation, the court may require the probationer to be *imprisoned* in the county jail or the house of correction . . . ." *Id.* at 623 n.1 (emphasis added). It is difficult for me to conclude that such defendants were not sentenced to six months in jail even though a sentence of probation was "pronounced."

Yet, the rule we announce under U.S.S.G. § 4A1.1 relies on the kind of sentence that is pronounced. This defines the sentence in *Sturdivant* as a sentence of probation even though the sentencing court clearly intended to sentence the defendants to six months in jail. The intent of the sentencing court is thus lost to the manner of articulation because § 4A1.1 ignores the reality that the precise pronouncement of a sentence is governed by many factors that are irrelevant to an appropriate determination of a criminal history category. Those factors can dictate the manner of pronouncing sentence even as they obfuscate the sentencing court's actual intent.

---

[21] It is not clear from the opinion why the judge pronounced the sentence in this manner rather than simply sentencing the defendants to a period of incarceration in the county jail.

The place of confinement is usually more significant than the manner in which a sentence is pronounced because the place of confinement is more indicative of pertinent offender characteristics for purposes of calculating a subsequent sentence under § 4A1.1. Furthermore, I submit that relying upon the place of confinement rather than the manner of pronouncement is of greater, not less, significance if a judge recommends placement while leaving the ultimate decision to an administrator of a community corrections facility or alternative housing. Such administrators are almost always experienced professionals with expertise in rehabilitation and/or treatment programs, and sentencing judges usually lack such expertise. The administrator's decision to admit a defendant to his/her program says something about the level of threat the defendant poses to the community, the defendant's potential for successful rehabilitation and his/her ability to cooperate in a therapeutic setting. That assessment is certainly no less important than a court's pronouncement, and it may be a great deal more important. It can be factored into a § 4A1.1 analysis simply by allowing the recommendation and the place of confinement to be considered when determining "a prior sentence of imprisonment."

To sum up, I am skeptical that the Sentencing Commission or Congress intended the result we reach today because the rule we apply is inconsistent with the objectives of the sentencing guidelines. It codifies unintended disparities by treating very different sentences alike and very similar sentences differently under § 4A1.1. It erroneously assumes that sentences are pronounced uniformly in all jurisdictions, and that such pronouncements best allow a subsequent court to determine if an earlier sentence was intended to be served in a jail or in alternative housing. In doing so, the rule totally ignores the fact that many factors unrelated to offender characteristics can influence how sentences are pronounced in various jurisdictions.

In *United States v. Nelson*, 918 F.2d 1268, 1272 (6th Cir. 1990), the Court of Appeals for the Sixth Circuit noted that Congress was attempting to eliminate "illogical, unjust and unwarranted disparity" in enacting the guidelines.[22] I can only hope that Congress and the Sentencing Commission will act to eliminate the illogical, unjust and unwarranted disparity that will inevitably accompany widespread use of the pronouncement rule rather than allowing that rule to hold sway. In the meantime, it may be that such problems can only be

_____

[22] This court was not persuaded by *Nelson*'s justification of using such departures to eliminate disparities between co-defendants in the same case. *See United States v. Seligsohn*, 981 F.2d 1418, 1428 (3d Cir. 1992). We have, however, relied upon the reasoning to support other propositions. *Id.*

minimized by judicious use of guideline departures as suggested in *Nelson*.[23]

[23] It may also be that the kind of discrepancies I am concerned about are the inevitable result of an attempt to systematically quantify every conceivable offender characteristic rather than individualizing sentencing by allowing experienced judges to consider everything he/she deems relevant in a particular case and impose a sentence that the judge believes is fair, consistent with the objectives of criminal sanctions, and in the best interest of the community.

Although the pre-guidelines approach certainly allowed disparity and bias to creep into sentencing, it also allowed judges to distinguish prior sentences of imprisonment from treatment in a custodial facility where appropriate. Amending § 4A1.1 to allow consideration of a prior sentencing recommendation will certainly not transform the guidelines. However, it will at least address one of the disparities that now exist and it can do so without opening the door to the bias that many thought existed before the guidelines were enacted.